# JS-6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| Case No. | **SACV 14-0596 JGB (SPx)** | Date | June 18, 2014 |
|---|---|---|---|
| Title | *Lourdes Heredia, et al. v. Johnson & Johnson, et al.* | | |

| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |
|---|---|

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** **Order (1) DENYING AS MOOT Defendants' Motion to Stay (Doc. No. 12); (2) GRANTING Plaintiffs' Motion to Remand (Doc. No. 14); and (3) REMANDING the Action to the Superior Court of California, County of Orange (IN CHAMBERS)**

Before the Court are Plaintiffs' motion to remand (Doc. No. 14) and Defendants' motion to stay (Doc. No. 12). The Court finds these matters appropriate for resolution without hearings. See Fed. R. Civ. P. 78(b); L.R. 7-15. After considering the papers timely filed in support of and in opposition to the motions, the Court GRANTS Plaintiffs' motion to remand and DENIES AS MOOT Defendants' motion to stay.

## I.  BACKGROUND

On February 18, 2014, sixty-three individual Plaintiffs filed a complaint in state court against Defendants Johnson & Johnson, Ethicon, Inc., Ethicon, LLC, and Does 1 through 500, inclusive (collectively, "Defendants"). ("Compl.," Decl. of Joshua J. Wes, Doc. No. 2, Exh. B.) The Complaint alleges Plaintiffs suffered a variety of injuries from the surgical implantation of pelvic mesh devices designed, tested, manufactured, marketed, sold and distributed by Defendants. (Compl. ¶¶ 1, 134-144.) On April 16, 2014, Defendants removed the action to this Court on the basis of diversity jurisdiction. (Not. of Removal ¶ 4, Doc. No. 1.)

On April 30, 2014, Defendants moved to stay the case pending a transfer by the Judicial Panel on Multidistrict Litigation. ("MTS," Doc. No. 12.) Plaintiffs opposed on May 12, 2014. ("MTS Opp'n," Doc. No. 15.) On May 19, 2014, Defendants replied. ("MTS Reply," Doc. No. 16.)

On May 9, 2014, Plaintiffs moved to remand this action to state court, contending that complete diversity is lacking. ("MTR," Doc. No. 14.) On May 19, 2014, Defendants opposed. ("MTR Opp'n," Doc. No. 17.) On May 23, 2014, Plaintiffs replied. ("MTR Reply," Doc. No. 18.)

On February 7, 2012, the Judicial Panel on Multidistrict Litigation ("JPML") established an MDL action in the United States District Court for the Southern District of West Virginia to coordinate pretrial proceedings for all Ethicon pelvic surgical mesh device-related litigation (MDL No. 2327). See In re Ethicon, Inc., Pelvic Repair Sys. Prods. Liab. Litig.["Ethicon MDL"], 844 F. Supp. 2d 1359 (J.P.M.L. 2012). To date, over fourteen thousand cases are pending in the Ethicon MDL. (MTS at 3.)

## II. LEGAL STANDARD

### A. Stay

The United States Supreme Court holds that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. North American Co., 299 U.S. 248, 254 (1936). "Whether or not to grant a stay is within the court's discretion and it is appropriate when it serves the interests of judicial economy and efficiency." Rivers v. Walt Disney Co., 980 F. Supp. 1358, 1360 (C.D. Cal. 1997) (citations omitted). District courts consider three factors when deciding whether to grant a motion to stay proceedings pending the motion filed with the MDL: "(1) potential prejudice to the non-moving party; (2) hardship and inequity to the moving party if the action is not stayed; and (3) the judicial resources that would be saved by avoiding duplicative litigation if the cases are in fact consolidated." Id.

### B. Remand

Federal courts have original jurisdiction of all civil actions where the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states. 28 U.S.C. § 1332. Proper jurisdiction under Section 1332 requires complete diversity, so each plaintiff must be diverse from each defendant. Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 553 (2005). To protect the jurisdiction of state courts, removal jurisdiction should be strictly construed in favor of remand. Harris v. Bankers Life and Cas. Co., 425 F.3d 689, 698 (9th Cir. 2005) (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108–09 (1941)). "Federal jurisdiction must be rejected if there is any doubt as to the right of removal." Gaus v. Miles, 980 F.2d 564, 566 (9th Cir. 1992) (internal citation omitted). "Th[is] 'strong presumption' against removal jurisdiction means that the defendant always has the burden of establishing that removal is proper." Id. (internal citations omitted).

## III. DISCUSSION

### A. Order of the Motions

In previous actions involving Defendants and the Ethicon MDL, the Court has taken up the stay issue first and agreed to stay the action pending the JPML's decision to transfer. See, e.g., Joan Miller, et al. v. Johnson & Johnson, et al., No. CV 13-6285 JGB (SPx); Pamela Ruiz, et al. v. Johnson & Johnson, et al., CV No. 13-6289 JGB (SPx). However, after reviewing several other recent decisions by courts in this district, the Court found that the weight of authority favors remand. See Xochil Robinson, et al. v. Johnson & Johnson, et al., No. CV 14-0899 JGB (SPx). Despite the Court's clear indication that jurisdiction over such actions was lacking, Defendants once again attempt to convince the Court that it can exercise diversity jurisdiction over a non-diverse Plaintiff.

The Ninth Circuit has made clear that courts should "address subject matter jurisdiction at the outset in the 'mine run of cases,' and reach other issues first only where the jurisdictional issue is 'difficult to determine' and the other ground is relatively 'less burdensome.'" Potter v. Hughes, 546 F.3d 1051, 1061 (9th Cir. 2008) (quotation omitted). The Court does not consider the jurisdictional issue in this action to be "difficult to determine" or outside the "mine run of cases," and thus Ninth Circuit precedent suggests that the Court should consider Plaintiffs' motion to remand first. Numerous courts in this circuit have decided to take up the issue of remand prior to stay in order to address the jurisdictional issue first. See DeKalb v. C.R. Bard, Inc., No. CV 13-6308 DMG (PJWx), Doc. No. 30 (C.D. Cal. Oct. 8, 2013); Perry v. Luu, No. 1:13-cv-729, 2013 WL 3354446, at *3 (E.D. Cal. July 3, 2013) (addressing motion to remand before motion to stay pending determination by JPML in pelvic mesh case); Goodwin v. Kojian, No. SACV 13-325, 2013 WL 1528966, at *2 (C.D. Cal. Apr. 12, 2013) (same).

Accordingly, the Court first turns to the motion to remand.

### B. Remand

Diversity jurisdiction under 28 U.S.C. § 1332 requires complete diversity, meaning every plaintiff must be diverse from every defendant. See Lincoln Property Co. v. Roche, 546 U.S. 81, 89 (2005). Here, Plaintiffs are from twenty-two states, but two Plaintiffs, Michelle Petrillo and Audrey Davis, are citizens of New Jersey and are not diverse from Defendants Johnson & Johnson and Ethicon, both of which have their principal places of business in New Jersey and therefore are citizens of that state. (Compl. ¶¶ 5, 19, 67, 69; Not. of Removal ¶¶ 12-13, 16.) Thus, it appears from the face of the Complaint that jurisdiction cannot properly lie.

In prior similar actions before this Court, Defendants asserted that diversity jurisdiction exists because Plaintiffs have "fraudulently misjoined" non-diverse Plaintiffs to circumvent diversity jurisdiction. See Xochil Robinson, et al. v. Johnson & Johnson, et al., No. CV 14-0899 JGB (SPx), Doc. No. 18. Fraudulent misjoinder is a concept recognized only by the Fifth and Eleventh Circuits which permits the court to ignore the citizenship of non-diverse plaintiffs when there is no real connection among the plaintiffs' claims, such that plaintiffs' joinder of the parties is "so egregious as to constitute fraudulent joinder." Tapscott v. MS Dealer Serv. Corp., 77 F.3d

1353, 1360 (11th Cir. 1996).  This Court noted that the Ninth Circuit has not adopted the fraudulent misjoinder doctrine, and the Court refused to apply it in Robinson.  See Robinson, No. CV 14-0899 JGB (SPx), Doc. No. 32.

Despite this Court's clear intent to join other courts in this district in remanding pelvic mesh actions improperly removed, Defendants seek to distinguish Robinson and reexamine the relevant legal precedent.  (MTR Opp'n at 4.)  However, Defendants' attempts are futile.  Instead of presenting a new legal theory, Defendants merely relabel their "fraudulent misjoinder" arguments in order to obtain a different result.  Such repackaging of identical legal arguments does not disguise the underlying theory, which was previously rejected by this Court.

Defendants admit that their argument for diversity jurisdiction is premised on the "fraudulent joinder of two non-diverse plaintiffs."  (Not. of Removal at 4.)  Instead of labelling this argument "fraudulent misjoinder," Defendants seek to apply a host of ancient U.S. Supreme Court caselaw decrying jurisdictional manipulation.  (Not. of Removal ¶¶ 18-31 (relying primarily on cases from 1840, 1906 and 1907).)   None of this caselaw is directly on point.

First, a majority of the cases Defendants cite address plaintiffs' fraudulent joinder of a non-diverse defendant to avoid federal jurisdiction.  See Salem Trust Co. v. Manufacturers' Fin. Co., 264 U.S. 182, 189 (1924); Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921) ("If in such a case a resident defendant is joined, the joinder, although fair upon its face, may be shown by a petition for removal to be only a sham or fraudulent device to prevent a removal[.]"); Chesapeake & O. R. Co. v. Cockrell, 232 U.S. 146, 152 (1914) ("[T]his right of removal cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy."); Wecker v. Nat'l Enameling & Stamping Co., 204 U.S. 176, 186 (1907) (fraudulently joining non-resident defendant did not defeat removal).  For the reasons discussed below, Defendants have not shown that the fraudulent joinder doctrine discussed in these cases applies equally to plaintiffs' fraudulent joinder of non-diverse plaintiffs on facts similar to those present here.  See Lighting Sci. Grp. Corp. v. Koninklijke Philips Elecs. N.V., 624 F. Supp. 2d 1174, 1183 (E.D. Cal. 2008) ("As a preliminary matter, few courts appear to have addressed the application of the fraudulent joinder rule to allegedly improper plaintiffs."); Cal. ex rel. Sherwin v. Office Depot, Inc., No. CV 12-9952 FMO AJWX, 2014 WL 320156, at *4 (C.D. Cal. Jan. 29, 2014) ("The Ninth Circuit has consistently defined the [fraudulent joinder] doctrine to apply only to the fraudulent joinder of defendants.").

Defendants also cite several cases addressing issues not present before the Court.  For example, Defendants heavily rely on a recent case which holds that courts need not analyze the real parties in interest to a suit when deciding whether a suit is a mass action under the Class Action Fairness Act ("CAFA").  See Mississippi ex rel. Hood v. AU Optronics Corp., 134 S. Ct. 736, 745 (2014).  However, Defendants admit that they are not removing on the basis of CAFA, thus Hood has no applicability here.  (MTR Opp'n at 1.)  Another line of cases Defendants cite addresses plaintiffs' right to join a non-diverse defendant after removal.  See Desert Empire Bank v. Ins. Co. of N. Am., 623 F.2d 1371, 1376 (9th Cir. 1980).  However, both the facts and procedural posture of this action do not present a similar scenario.

The only cases which have a modicum of relevance to the question presented, namely, whether Plaintiffs' fraudulent joinder of a non-diverse plaintiff permits removal, dealt with wholly distinct factual circumstances.  In Irvine, for Use of Lumberman's Bank at Warren v. Lowry, 39 U.S. 293 (1840), the Court examined whether the plaintiff or his assignee was the real party in interest for purposes of determining diversity jurisdiction.  The same is true of Attorneys Trust v. Videotape Computer Products, Inc., 93 F.3d 593, 599 (9th Cir. 1996), where the Court held that diversity jurisdiction was not destroyed when a plaintiff assigned an account for collection to another party.  Here, none of the Plaintiffs received their legal claims by assignment; therefore, these cases are not on point.

None of the cases Defendants cite address the procedural and factual scenario presented here.  In this action, each Plaintiff claims she was injured by the surgical implantation of Defendants' pelvic mesh devices which Defendants failed to adequately warn about, design, test, and label.  (Compl. ¶¶ 107-144.)  In order to assert diversity jurisdiction, Defendants claim that two of these Plaintiffs, Michelle Petrillo ("Petrillo") and Audrey Davis ("Davis"), are fraudulently joined in a manipulative, collusive, and improper attempt to defeat federal jurisdiction.  (MTR Opp'n at 8-10.)

Even if the Court accepted that the fraudulent joinder doctrine could be applied to plaintiffs, Defendants have not met the high burden of demonstrating that Plaintiffs Petrillo and Davis fail to state a cause of action against Defendants and that failure is obvious according to the settled laws of the state.  McCabe v. Gen. Foods Corp., 811 F.2d 1336, 1339 (9th Cir. 1987). In fact, Defendants do not try to argue that Petrillo and Davis cannot state causes of action against Defendants.  It is clear from the Complaint that all Plaintiffs state the same claims against Defendants.  As with all Plaintiffs, Plaintiffs Petrillo and Davis were surgically implanted with Defendants allegedly defective device and sustained injuries therefrom.  (Compl. ¶¶ 2-3, 134-144.)  Defendants do not argue that none of the Plaintiffs could state claims against them, and the Complaint provides no basis to single out Petrillo and Davis' claims from any other.  Defendants fail to overcome the "general presumption against fraudulent joinder" and have not met their heavy burden of demonstrating the fraudulent joinder of Petrillo and Davis by "clear and convincing evidence."  Hamilton Materials, Inc. v. Dow Chem. Corp., 494 F.3d 1203, 1206 (9th Cir. 2007).

Realizing they cannot meet their burden, Defendants insist that the Court must apply a different test when evaluating the fraudulent joinder of a non-diverse plaintiff.  First, there is no basis in the law to apply any other test than the one used in a traditional action alleging fraudulent joinder of a non-diverse defendant.  In fact, courts who have attempted to apply the doctrine to non-diverse plaintiffs have used the test outlined above.  See Lighting Sci. Grp. Corp., 624 F. Supp. 2d at 1183 ("As a preliminary matter, few courts appear to have addressed the application of the fraudulent joinder rule to allegedly improper plaintiffs. Those that have, however, apply the rule to plaintiffs in the same manner as it is applied against defendants."). Second, Defendants' proposed alternative test for fraudulent joinder has been rejected by courts in the Ninth Circuit.  Defendants ask the Court to "look behind" the pleadings to find Plaintiffs'

inclusion of Petrillo and Davis was a manipulative attempt to avoid federal jurisdiction.[1]  (MTR Opp'n at 8-11.)  In effect, Defendants ask the Court to focus on Plaintiffs' subjective intent in joining a non-diverse plaintiff.  (See MTR Opp'n at 18 ("When this Court looks behind the pleadings, it becomes readily apparent that Plaintiffs' attempt to manipulate the Court's diversity jurisdiction by joining two token New Jersey residents . . . .").)  This so-called "intent test" has been squarely rejected in this Circuit.  See Albi v. St. & Smith Publ'ns, 140 F.2d 310, 312 (9th Cir. 1944) (stating that "it is universally thought that the motive for joining [a non-diverse] defendant is immaterial"); Selman v. Pfizer, Inc., 11-CV-1400-HU, 2011 WL 6655354, at *6-11 (D. Or. Dec. 16, 2011) (conducting a thorough review of the case law, including many of the cases cited by Defendants here, and concluding that the "intent test" "is unsupported by existing case law, is contrary to the law stated in the Ninth Circuit, and would be unworkable in practice").  In evaluating fraudulent joinder at the time of removal, the Court will not analyze Plaintiffs' motives for joining Petrillo and Davis.

Defendants also put forth another argument to obtain federal jurisdiction.  They claim that under Rules 17 and 19, Plaintiffs Petrillo and Davis are not necessary or real parties in interest; therefore, they should be dismissed from the action and not considered for purposes of diversity jurisdiction.  (MTR Opp'n at 14-17.)  Many of the cases Defendants cite for this proposition, such as Dep't of Fair Emp't & Hous. v. Lucent Technologies, Inc., 642 F.3d 728, 737 (9th Cir. 2011), address the presence of a state as a plaintiff when it appears that the state has no real interest in the controversy.  Such cases are inapposite here as none of the Plaintiffs are states.  Other cases, like those discussed above, address the severance of unnecessary or improperly joined defendants, not plaintiffs.  Finally, Defendants rely heavily on Lincoln Prop. Co. v. Roche, 546 U.S. 81 (2005), where the Supreme Court held that it is not incumbent on the named defendants to negate the existence of a potential defendant whose presence in the action would destroy diversity.  Id. at 88-94.  Such a holding is clearly irrelevant to the instant action, but more importantly, Lincoln's reasoning stands against the proposition Defendants attribute to it.  Defendants rely on Lincoln to support their contention that the Court can use Rules 17 and 19 to disregard the citizenship of a dispensable party with several rights.  (MTR Opp'n at 16-17.)

---

[1] The primary case Defendants cite for the "look behind" rule is Mississippi ex rel. Hood v. Au Optronics Corp., 134 S. Ct. 736 (2014).  There, the Court refused to "look behind" the pleadings to determine the real party in interest in a case removed under the mass action provision of CAFA.  Id. at 745.  The Court noted that in certain circumstances it "interpreted the diversity jurisdiction statute to require courts in certain contexts to look behind the pleadings to ensure that parties are not improperly creating or destroying diversity jurisdiction," but none of the cited cases are similar to the one presented here.  Id.  The Hood Court cited cases where a plaintiff "fraudulently nam[ed] a nondiverse defendant," "collusively assign[ed] his interest in an action," or which "involve[ed] a State or state official."  Id. (citing Wecker v. National Enameling & Stamping Co., 204 U.S. 176, 185–186 (1907); Kramer v. Caribbean Mills, Inc., 394 U.S. 823, 825–830 (1969); Missouri, K. & T. R. Co. v. Missouri Railroad and Warehouse Comm'rs, 183 U.S. 53, 58–59 (1901).)  None of these examples involve the scenario at issue here where Defendants accuse Plaintiffs of fraudulently joining two non-diverse Plaintiffs who share the same legal claims brought by the other sixty-one Plaintiffs.  Defendants provide no support for extending the principle outlined in Hood to these facts.

However, Lincoln states that Rules 17 and 19 "address party joinder, not federal-court subject-matter jurisdiction[,]" and thus these rules of civil procedure cannot be used to extend or limit the Court's diversity jurisdiction. Id. at 90. In fact, in direct contradiction to Defendants' argument, the Lincoln Court refused to apply "a jurisdictional 'real parties to the controversy' rule applicable in diversity cases to complaining and defending parties alike." Id. at 91. Accordingly, based on Lincoln, the Court need not examine whether Plaintiff Albecker satisfies Rules 17 and 19 for purposes of diversity jurisdiction.

Even if the Court found it necessary to examine whether Plaintiff Albecker satisfies Rules 17 and 19, as applied, Defendants' argument is baffling. Defendants argue that none of the Plaintiffs are real parties in interest to this action under Rule 17(a) or required parties under Rule 19 and thus each Plaintiff must bring a separate action. (See Not. of Removal ¶ 25 ("[N]o plaintiff listed in the Heredia Complaint has standing to prosecute the alleged claims of any other plaintiff named in the Complaint.").) In essence, Defendants argue that every Plaintiff is fraudulently joined in this action. Given this rationale, there is no basis for the Court to sever Plaintiffs Petrillo and Davis from the action, while all the other purportedly improper Plaintiffs remain joined. In addition, Defendants do not deny that Plaintiffs Petrillo and Davis could bring individual actions against Defendants for their injuries from the products. (See MTR Opp'n at 16.) Thus, Petrillo and Davis are necessarily "real parties in interest" pursuant to Rule 17. See Klamath–Lake Pharmaceutical Ass'n v. Klamath Medical Serv. Bureau, 701 F.2d 1276, 1282 (9th Cir. 1983) ("Rule 17(a) is designed to ensure that lawsuits are brought in the name of the party possessing the substantive right at issue.").

Regarding joinder, Defendants argue that Plaintiffs' claims are several, not joint; therefore, Petrillo and Davis are dispensable and should be severed. (MTR Opp'n at 14-17.) Even if Petrillo and Davis are not required parties pursuant to Rule 19(a), they can still be properly joined as plaintiffs pursuant to permissive joinder under Rule 20. Rule 20 permits plaintiffs to join in an action if "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). Defendants admit that Plaintiffs are joined severally, which is permissible under Rule 20. (Not. of Removal ¶ 24; MTR Opp'n at 14.) Notably, matters arise out of the same transaction if they share "similarity in the factual background[.]" Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997). As is clear from the Complaint, Plaintiffs' claims arise out of a series of similar transactions related to the implantation of Defendants' products and raise common questions of law including whether Defendants' products were defective and dangerous. (Compl. ¶¶ 3, 107-144.) Thus, the Court concludes Plaintiffs' claims meet the permissive joinder requirement of Rule 20 and there is no basis to sever Plaintiffs Petrillo and Davis.

For the foregoing reasons, none of Defendants' arguments support severance of Petrillo and Davis or this Court's subject matter jurisdiction over the action. The variety of tests suggested by Defendants is unsupported by precedential authority. Moreover, even if the Court were to apply Defendants' proposed standards, Defendants fail to demonstrate that Petrillo and Davis are fraudulently joined or should be severed. Defendants have not demonstrated Plaintiffs Petrillo and Davis are improper Plaintiffs; therefore, their citizenships must be considered for

purposes of diversity jurisdiction.  "[U]nder our dual court system[, if] a potential plaintiff has a choice between a state forum and a federal forum, it is his privilege to exercise that choice subject to legal limitations, and if he can avoid the federal forum by the device of properly joining a [non-diverse] defendant or a [non-diverse] co-plaintiff, he is free to do so."  Iowa Pub. Serv. Co. v. Med. Bow Coal Co., 556 F.2d 400, 406 (8th Cir. 1977).  Because Plaintiffs Petrillo and Davis and Defendants Johnson & Johnson and Ethicon are New Jersey citizens, the Court does not have diversity jurisdiction over this action and removal was improper.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiffs' motion to remand, DENIES AS MOOT Defendants' motion to stay, and REMANDS this action to the Orange County Superior Court.

**IT IS SO ORDERED.**